IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CITY OF MIDLOTHIAN, TEXAS, § § Plaintiff, § § v. § § L. RANDY DENTON, *et al.*, § § Defendants. § | Civil Action No. 3:08-CV-1897-N |

# **ORDER**

This Order addresses the City of Midlothian's (the "City") motion to remand [50]. Because the City's well-pleaded complaint does not raise a federal question and the subject matter of the action is not completely preempted by federal law, the Court lacks subject matter jurisdiction. Accordingly, the Court grants the motion and remands the case to the 40th Judicial District Court in Ellis County, Texas.

## **I. Origins of the City's Claims**

This case arises out of alleged violations of various municipal codes and ordinances by Defendants L. Randy Denton ("Denton"), MidTexas International Center, Inc. ("Midtexas"), Texas Properties Trust ("TPT"), and Trade Zone Operations, Inc. ("TZO") (collectively, "Defendants") on land commonly known as the "Autopark." According to the City's First Amended Complaint, the Defendants collectively operate or manage a light manufacturing, auto repair, and outdoor storage business at the Autopark in violation of the City's Zoning Ordinance, Subdivision Ordinance, Building Code, Grading Ordinance, and

Standard Specifications. The City seeks injunctive and declaratory relief in order to enforce its regulations.

Initially, the City sought to regulate activity not only by the current Defendants, but also by Texas Central Business Lines Corporation ("TCB"), a rail carrier that operates in interstate commerce and is subject to the jurisdiction of the Surface Transportation Board ("STB").[1] The City sought to impose its codes and ordinances on construction occurring in connection with TCB's "Transload Center," an area of land adjacent to the Autopark which TCB used to conduct part of its railroad operations. TCB removed this case on the ground that the Interstate Commerce Commission Termination Act ("ICCTA") preempted the City's claims. The City moved this Court for remand. The Court denied the City's motion, holding:

> Through this action, the City seeks a temporary restraining order and temporary and permanent injunctions to prevent rail development and construction activities they argue fail to comply with city codes and ordinances. *See* Second Am. Pet. at 6–7. The codes and ordinances the City is attempting to enforce through this action at least in part involve permitting or preconstruction approval that could be used to deny the railroad the ability to conduct some part of its operations or proceed with authorized activities. As a result, the City's claims "'only arise[ ] under federal law and could, therefore, be removed under § 1441.'" *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (alteration in original) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003)); *see also PCI Transp. Inc. v. Ft. Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

Order of Jan. 23, 2009 at 2.

---

[1] The City added TCB as a defendant shortly after it filed this action in state court.

The facts before the Court are markedly different now. After the Court denied the City's first motion to remand, the City amended its complaint. *See* Pl.'s First Am. Compl. [19]. It dropped TCB as a party to the case and confined its claims to activities conducted by Denton and Midtexas on property leased by those defendants from TPT. *Id.* The City pursued its claims against TCB in a separate case, *Texas Central Bus. Lines Corp. v. City of Midlothian*, Civil Action No. 07-CV-1351 (the "TCB case"), which came before this Court for a bench trial on November 30, 2009. Thus, the City no longer seeks to regulate any activity by TCB, in connection with the Transload Center or otherwise, in the context of this action. The City asks the Court to remand the case because the basis for removal no longer exists.

Defendants argue that regulation of their activities at the Autopark will substantially interfere with TCB's operations at the adjacent Transload Center. Therefore, Defendants argue that the ICCTA preempts the City's claims regardless of whether TCB is a party to the case. Furthermore, Defendants urge the Court to assert supplemental jurisdiction over the City's state law claims in the interests of judicial economy, convenience, and fairness. According to Defendants, the Court is familiar with the facts presented in this case because it recently issued judgment in the TCB case, in which the City sought to enforce its codes and ordinances at the Transload Center. In addition, the Defendants argue that the Court has already devoted substantial resources to reviewing and researching the parties' claims. Thus, the Defendants ask the Court to retain jurisdiction over the case.

The Court remands the case for the reasons provided below.

## II. LAW GOVERNING REMAND

A district court must remand a case if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)). When a plaintiff seeks remand, the removing defendant "bears the burden of demonstrating that a federal question exists." *Id.*

Under the well-pleaded complaint rule, "a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (U.S. 2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). "[G]enerally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." *Gutierrez*, 543 F.3d at 251-52 (quoting *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)).

The complete preemption doctrine is an exception to the well-pleaded complaint rule. Under this doctrine, a federal court may assert jurisdiction over a complaint that purports to rest on state law where the law governing the complaint is exclusively federal. *Vaden*, 129 S.Ct. at 1273; *see McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir. 2008). In other words, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because 'the federal statute so forcibly

and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all.'" *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008) (quoting *Hoskins v. Bekins Van Lines*, 343 343 F.3d 769, 773 (5th Cir. 2003). The central inquiry in a complete preemption analysis is "whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Barrois*, 533 F.3d at 331 (citing *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 544 (5th Cir. 2005)). "If Congress intended the federal cause of action to be exclusive, the state law cause of action is completely preempted, and federal jurisdiction exists." *Id.*

The complete preemption doctrine is distinct from the concept of ordinary preemption. *See Barrois*, 533 F.3d at 331. "Complete preemption is a 'jurisdictional doctrine,' while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim.'" *Id.* (quoting *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005)). In general, complete preemption is "less common and more extraordinary" than ordinary preemption. *Id.*

### III. COMPLETE PREEMPTION UNDER ICCTA

The complete preemption doctrine "applies to state causes of action that 'fall squarely' under 49 U.S.C. § 10501(b) of the ICCTA." *Id.* Section 10501(b) states:

(b) The jurisdiction of the Board over –

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

>   (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
>   is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).[2]

In *Barrois*, the Fifth Circuit looked to the STB's interpretation of the statute in determining whether it completely preempted a landowner's state law claims. "As the agency authorized by Congress to administer the [ICCTA], the Transportation Board is uniquely qualified to determine whether state law should be preempted by the [ICCTA]." *Barrois*, 533 F.3d at 331-32 (quoting *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007)); *see also Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404 (5th Cir. 2010) (en banc) (adopting the STB's as-applied preemption analysis). The court described the STB's comprehensive test for determining ordinary preemption:

>   The STB's § 10501(b) preemption analysis distinguishes between two types of preempted state actions or regulations. First, there are those state actions that are "categorically preempted" by the ICCTA because such actions "would directly conflict with exclusive federal regulation of railroads." *CSX Transportation, Inc. – Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *2-*3 (S.T.B. May 3, 2005). Regulations falling within this first category are "facially preempted" or "categorically preempted" and come in two types:
>>   The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized . . . .
>>   Second, there can be no state or local regulation of matters directly regulated by the Board-such as the construction, operation, and abandonment

---

[2] The "Board" is the Surface Transportation Board, which administers the ICCTA. *See* 49 U.S.C. § 10102(1).

ORDER – PAGE 6

>   of rail lines ( see 49 U.S.C. 10901-10907); railroad mergers, line acquisitions, and other forms of consolidation ( see 49 U.S.C. 11321-11328); and railroad rates and service ( see 49 U.S.C. 10501(b), 10701-10747, 11101-11124).
>
> *Id*. at \*2 (citations and footnote omitted). State actions such as these constitute " per se unreasonable interference with interstate commerce." *Id*. at \*3. As such, the preemption analysis for state regulations in this first category is addressed to "the act of regulation itself" and "not to the reasonableness of the particular state or local action." *Id*.
>
>   The second category of preempted state actions and regulations are those that are preempted as applied. Section 10501(b) of the ICCTA may preempt state regulations, actions, or remedies as applied, based on the degree of interference the particular state action has on railroad operations. "For state or local actions that are not facially preempted, the section 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation." *Id*. Citing our decision in *Friberg* [*v. Kansas City S. Ry. Co.*], 267 F.3d [439,] 439 [5th Cir. 2001], the STB stated that "it is well settled that states cannot take an action that would have the effect of foreclosing or unduly restricting a railroad's ability to conduct any part of its operations or otherwise unreasonably burdening interstate commerce." *Id*. at \*4.

*Barrois*, 533 F.3d at 332.

The *Barrois* court noted: "the STB's test applies to ordinary preemption analysis under § 10501(b); the test does not necessarily apply to complete preemption." *Id.* Nonetheless, it found the test "instructive." *Id.* The court declined "to define the precise contours of the complete preemption doctrine under the ICCTA" because, even assuming that the doctrine extends to as-applied preemption challenges, the Railroad failed to show that the state law claims at issue unreasonably interfered with railroad operations. *Id.* In coming to its conclusion, the court applied a presumption against preemption, stating: "Deference to our federalism counsels a presumption that areas of law traditionally reserved to the states, like police powers or property law, are not to be disturbed absent the clear and

ORDER – PAGE 7

manifest purpose of Congress." *Barrois*, 533 F.3d at 334; *see In re Davis*, 170 F.3d 475, 481 (5th Cir. 1999).

## IV. ICCTA DOES NOT COMPLETELY PREEMPT THE CITY'S STATE LAW CLAIMS

The City seeks (1) access to the Defendant's property to determine the nature and extent of ordinance violations associated with a particular water main, and (2) to enforce paving requirements applied to the staging of automobiles on MidTexas International center's leasehold.[3] Here, as in *Barrois*, the Court finds the STB's test instructive in its complete preemption analysis. Applying STB's test in light of the general presumption against preemption and the extraordinary nature of complete preemption, the Court holds that Defendants fail to show that ICCTA completely preempts the City's state law claims.[4] The Court considers the two parts of the STB's test in turn.

### A. *Defendants Do Not Show that ICCTA Expressly Preempts the City's Claims*

First, Defendants argue that ICCTA expressly preempts the City's attempt to enforce its codes and ordinances as they relate to a water main that runs through Defendants' property and onto land leased and operated by TCB. According to Defendants, such

---

[3]On the face of the City's first amended complaint, it appears that the City seeks to regulate more than these two categories of conduct. However, the Defendants do not argue that the ICCTA preempts any other attempted regulations, so the Court limits its inquiry to these two issues.

[4]The Court is familiar with the facts at issue only through the City's amended complaint and the parties' briefing. Although the Defendants fail to meet their burden at this stage in the proceedings, the Court expresses no opinion with regard to whether, with additional evidence at the summary judgment or trial phase and in the context of *ordinary* instead of complete preemption, Defendants can demonstrate that ICCTA preempts the City's state law claims.

ORDER – PAGE 8

enforcement would impose permitting or preclearance requirements that could be used to deny TCB the ability to conduct some part of its operations.[5]

In support of their argument, Defendants offer a declaration of Tommy McIntosh, TCB's Director of Operations, in which he states that access to water is important to TCB's railroad operations. Specifically, he indicates that TCB uses water to fill the locomotives' radiators, maintain the water levels in their batteries, and wash them. *See* Ex. 1 to Defs.' Resp. to Mot. to Remand at 1-2 [55-1]. According to McIntosh, the line that extends from the Autopark and onto TCB's leasehold is the only source of water available to TCB for these maintenance purposes. *Id.* Thus, McIntosh concludes that any disruption in the water line would disrupt TCB's ability to conduct its railroad operations. *Id.*

This evidence is insufficient to establish express preemption. As the Fifth Circuit established in *Franks*: "For a state court action to be expressly preempted under the ICCTA, it must seek to regulate the operations of rail transportation." *Franks*, 593 F.3d at 413. Thus, "laws that have the effect of managing or governing rail transportation will be expressly preempted," whereas laws that have a more remote or incidental effect on rail transportation will not. *Id.* at 410.

Here, Defendants offer no evidence to show that the application of the City's preclearance or permitting requirements against *Defendants* will have the effect of managing or governing TCB's rail activity. TCB likely would face some problems if it lost access to

---

[5]The Court assumes, *arguendo*, that the Defendants have standing to assert injuries to TCB as a mechanism for establishing preemption.

the water line at issue, but the City expressly states that it does not seek to terminate Defendants' or TCB's water supply. Pl.'s Reply at 5 [58]. Rather, it seeks access to the Autopark to evaluate the nature and extent of ordinance and code violations on the Defendants' property. *See* Pl's First Am. Compl. The Defendants offer no explanation for how, if at all, its compliance with a permitting process will interfere with TCB's operations where the water lines remain open.[6]

Further, the City invokes the so-called health and safety exception to preemption. The Second Circuit has observed:

> It therefore appears that states and towns may exercise traditional police powers over the development of railroad property, at least to the extent that the regulations protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions. Electrical, plumbing and fire codes, direct environmental regulations enacted for the protection of the public health and safety, and other generally applicable, non-discriminatory regulations and permit requirements would seem to withstand preemption.

*Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d Cir. 2005). The City argues that the codes and ordinances that relate to the water main at issue fall squarely within this exception. Considering the presumption against preemption, this argument is especially persuasive. With the facts before the Court, the City's attempt to regulate the transportation and delivery of potable water to its residents appears to involve the kind of traditional police

---

[6]To the extent that the inspection process results in temporary or intermittent water shut-off, Defendants provide no evidence regarding the extent and severity of the impact on TCB.

powers that both the health and safety exception and the presumption against preemption are designed to protect.

For these reasons, Defendants fail to meet their burden to show that ICCTA completely preempts the City's state-law claims because the City seeks to regulate a water line that reaches TCB's property.

### *B. Defendants Do Not Show that ICCTA Preempts the City's Claims As Applied*

Defendants argue that ICCTA preempts, as applied, the City's attempt to enforce its codes and ordinances as they relate to unpaved surfaces that the Defendants use to process and distribute automobiles. According to Defendants, such enforcement is a bad faith attempt to limit the number of automobiles that TCB can transport and, therefore, the revenue that TCB can generate.

In order to demonstrate that ICCTA preempts the City's claims as applied, Defendants must show that they have the effect of unreasonably burdening or interfering with rail transportation. *See Franks*, 593 F.3d at 414. Defendants fail to explain how their use of unpaved surfaces to store and transport automobiles involves rail transportation. For instance, they do not argue that they perform transloading operations or some other form of rail transportation "under the auspices" of TCB.[7] They provide no evidence – such as a declaration from TCB – to show that enforcement of the City's codes and ordinances will,

---

[7]*See City of Alexandria, VA – Petition for Declaratory Order*, STB Finance Docket No. 35157, 2009 WL 381800 (February 17, 2009) ("Accordingly, to qualify for federal preemption under section 10501(b), the activities at issue must constitute 'transportation,' and must be performed by, or under the auspices of, a 'rail carrier.'")

in fact, limit the number of automobiles that TCB can transport or the revenue it can generate. Especially considering the extraordinary nature of complete preemption, the Court holds that Defendants fail to meet their burden to show that the ICCTA completely preempts the City's state-law claims because the City seeks to regulate the use of unpaved surfaces.

## V. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION

Defendants urge the Court to exercise supplemental jurisdiction over the City's state-law claims pursuant to 28 U.S.C. § 1367(c). Section 1367 authorizes a court to decline to exercise supplemental jurisdiction over a state law claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In addition, district courts look to the common law factors of judicial economy, convenience, fairness, and comity when deciding whether to decline jurisdiction. *Brookshire Bros. Holding, Inc. v. Dayco Prods, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S.Ct. 1862, 1866 (2009) (citing 28 U.S.C. § 1367(c)).

Where, as here, a district court dismisses all federal claims before trial, the "'general rule' is that it should then decline to exercise jurisdiction over any remaining state-law claims." *Knatt v. Hosp. Service Dist. No. 1 of East Baton Rough Parish*, 2010 WL 1439277

at *2 (5th Cir. 2010) (citing *Brookshire Bros*, 554 F.3d at 602). However, "this rule is neither mandatory nor absolute." *Id.* Here, the Defendants contend that the interests of judicial economy, convenience and fairness support a the exercise of supplemental jurisdiction. The Court disagrees.

Defendants argue that this case shares a common nucleus of facts with the TCB case, which came before the Court on a bench trial on November 30, 2009. According to the Defendants, the Court is already familiar with the parties, properties, ordinances and claims at issue in this case because of the proceedings in the TCB case. This is not so. The TCB case and this case involve different parties and distinct issues. A comparison of the two complaints demonstrates the City's allegations in this action are unique and largely unrelated to its counterclaims in TCB. For example, the City's First Amended Complaint in this action expressly indicates that the property the City seeks to regulate "excludes that land within the Autopark that is subject to a one-lot plat approved by the city in 2006, consisting of approximately 243 acres, and which is leased by Texas Central Business lines, a rail carrier which claims immunity from all local regulations pursuant to the ICCTA from TPT, the owner of the tract." Pl.'s First Am. Compl. at 3. Thus, this action excludes the Transload Center, which was the central focus of the TCB case. The Court knows little about the light manufacturing, auto repair, and outdoor storage business at issue here.

In addition, Defendants cite the length of time that this case has been pending in federal court as a factor in favor of retaining jurisdiction. Although this case is not in the earliest possible stage of development, it has not progressed to a point where remand is

judicially inefficient. Thus, the Court finds that the interests of convenience and judicial economy do not weigh in favor of supplemental jurisdiction.

For these reasons, the Court declines to exercise supplemental jurisdiction.

## CONCLUSION

In sum, the City's well-pleaded complaint does not raise a federal question and the subject matter of the action is not completely preempted by federal law. Thus, the Court lacks subject matter jurisdiction. In addition, the Court declines to assert supplemental jurisdiction over the City's state law claims. Accordingly, the Court grants the City's motion and remands the case to the 40th Judicial District Court in Ellis County, Texas.

Signed July 2, 2010.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14